IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY D. DORSEY,

       **Plaintiff,**

       v.

CITY OF SHAWNEE, KANSAS, et al.,

       **Defendants.**

Case No. 25-2006-JAR-BGS

## MEMORANDUM AND ORDER

Plaintiff Anthony Dorsey brings a claim for malicious prosecution under 42 U.S.C. § 1983 against the City of Shawnee, Kansas and Officers Blair Whaley, FNU Soucie, and Sergeant Josh Bayless. Before the Court is Defendants' Motion to Dismiss (Doc. 7) for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The motion is fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court grants in part and denies in part Defendants' motion.

**I. Legal Standard**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[1] and must include "enough facts to state a claim for relief that is plausible on its face."[2] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3] The plausibility standard

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[2] *Id.* at 570.

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[4] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[7] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[5] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[7] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[8] *Id.* at 678–79.

[9] *Id*. at 679.

[10] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

## II. Background

The following facts are alleged in Dorsey's Complaint.[11] For the purpose of deciding this motion, the Court assumes these facts to be true and draws all reasonable inferences in Dorsey's favor.

Officer Whaley pulled Dorsey over while he was driving. And Whaley gave two reasons for that traffic stop. Whaley first explained that he pulled Dorsey over because his tag light was broken, but he disavowed that explanation after Dorsey and Whaley walked to the back of Dorsey's car and confirmed that the light was in fact not broken. So then Whaley gave a different reason for the traffic stop; he explained that Dorsey's license plate was obstructed. Whaley issued a warning ticket to Dorsey, but then Whaley discovered something else: Dorsey had outstanding traffic warrants from Wyandotte County, Kansas. So Whaley arrested Dorsey, and while conducting that arrest, Whaley ordered a K-9 unit to search the vehicle for drugs. The K-9 officer did not alert to drugs in the vehicle.

Following the arrest, Whaley booked Dorsey at the jail. During booking, Whaley discovered in Dorsey's wallet a small plastic baggie containing a "brown powder substance."[12] Dorsey told Whaley that he did not know what the substance was but that the brown powder had been in his wallet for a long time and was not an illegal substance. Dorsey then explained that it was "some kind of cooking spice."[13]

---

[11] Doc. 1. The Court may also consider the exhibits attached to the Complaint because they are "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The Court declines to consider the exhibit attached to Dorsey's response brief because it would not be helpful in deciding the motion to dismiss. *See Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings.").

[12] Doc. 1 ¶ 13.

[13] *Id.*

3

Whaley decided to conduct a field test of the substance and enlisted Officer Soucie to help with the test. That field test worked like this: it would indicate the presence of drugs by turning a particular color—purple to indicate opioid alkaloids and brown to indicate amphetamines. The officers conducted the field test, and in response to the brown powder, the test turned brown, which would indicate the presence of *amphetamines*. But Whaley and Soucie concluded that the test indicated *opioid alkaloids*, even though the test did not turn purple. And based on that erroneous reading of the field test's results, Whaley "submitted an updated arrest" with charges of "possession of opium, opioid, or certain stimulants"—a substance that the test did not test positive for. Then, based on that report, Sergeant Bayless filed a probable-cause affidavit stating that Dorsey's wallet contained a substance that was consistent with heroin and that tested positive for opiates. The affidavit further omitted two facts about the substance's identity: that Dorsey told the officers that it was not illegal and that it was "some kind of cooking spices." Following the field test, Whaley sent the brown powder to a lab for testing.

Dorsey was then charged with heroin possession. Based on Bayless's affidavit, which he based on Whaley's report and the erroneous field-test results, Johnson County prosecutors charged Dorsey with possession of heroin. A district judge later bound him over for trial. Dorsey was unable to post bond, so he remained in detention for the next forty-one days.

But during his detention, the lab's test results came back. The brown powder substance was neither amphetamines nor opioid alkaloids. It was cinnamon. Prosecutors dropped the charges against Dorsey, and he filed this suit for malicious prosecution against Whaley, Soucie, Bayless, and the City of Shawnee.

**III. Discussion**

Dorsey brings a § 1983 claim for malicious prosecution. He sues Whaley, Soucie, and Bayless in both their official and individual capacities, and he also seeks to impose *Monell* liability on the City of Shawnee for its failure to train the officers. The Court first addresses the individual-capacity claims and then the official-capacity claims.

**A. Individual-Capacity Claims**

Dorsey sues Whaley, Soucie, and Bayless ("the Officer Defendants") in their individual capacities, and they raise qualified immunity in response. The doctrine of qualified immunity "protects government officials from suit for civil damages if their conduct does not violate clearly established statutory or constitutional rights."[14] "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity."[15] "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment."[16] At the motion to dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness."[17] The court considers "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established" at the time of defendant's alleged misconduct.[18]

---

[14] *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016); *see also Ziglar v. Abbasi*, 582 U.S. 120, 150–51 (2017) ("The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011))).

[15] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

[16] *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)).

[17] *Id.* (internal quotation marks omitted) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

[18] *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

Once the defense of qualified immunity is adequately raised, the plaintiff bears the burden to show that the defendant is not entitled to qualified immunity.[19] The court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[20]  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."[21]

Dorsey has shouldered his burden to plead a violation of his clearly established rights. He therefore overcomes the Officer Defendants' invocation of qualified immunity.  A malicious-prosecution claim requires that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."[22]

The Officer Defendants argue that Dorsey has not alleged a violation of his clearly established rights.  They first argue that Dorsey has not alleged personal participation by Soucie or Whaley, so the claim against them must fail.  Next, the Officer Defendants argue that Dorsey has failed to allege the third element—that no probable cause supported his arrest, confinement, or prosecution.  The Court disagrees with both arguments.

As a threshold issue, the Court clarifies the nature of Dorsey's malicious-prosecution challenge.  Dorsey does not challenge the lawfulness of his initial arrests, which were made on the basis of the outstanding traffic warrants against him.  Instead, Dorsey challenges the

---

[19] *Thomas*, 765 F.3d at 1194.

[20] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[21] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

[22] *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014) (internal quotation marks omitted) (quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).

lawfulness of the prosecution against him for possession of heroin and his subsequent detention on that charge, sanctioned by a Johnson County district judge based on Bayless's affidavit.

Construing the Complaint in the light most favorable to Dorsey, he has alleged personal participation by Bayless, Whaley, and Soucie. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."[23] And allegations that an officer "prevaricate[d] and distort[ed] evidence" or supplied "false statements" that caused a "magistrate to issue a warrant" are sufficient to allege personal participation in a § 1983 malicious-prosecution violation.[24] Dorsey alleges that each officer made false statements that the brown powder tested positive for opioid alkaloids and was thus presumptively heroin. Soucie communicated that conclusion after conducting the field test; Whaley then incorporated that result into his report and stated that the substance tested positive for opioid alkaloids; Bayless then reiterated that same statement in his probable-cause affidavit.

Based on those allegations, Dorsey has alleged Whaley's, Soucie's, and Bayless's personal participation in the malicious prosecution. The Defendant Officers concede Bayless's personal participation because he wrote the probable-cause affidavit and submitted it with the false statements about the brown powder. As for Whaley and Soucie, although they did not author the probable-cause affidavit, each was the source of the false statements—incorporated into the probable-cause affidavit—that the brown powder was consistent with heroin and tested

---

[23] *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) (citing *Grimsley v. McKay*, 93 F.3d 676, 679 (10th Cir. 1996)).

[24] *Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004) (holding that defendant who fabricated evidence was not free of liability for malicious prosecution simply because she did not "initiate[]" or "file[] the charges"); *see also Kennedy v. Peele*, 552 F. App'x 787, 793 (10th Cir. 2014) (explaining that malicious-prosecution liability may exist when defendant misrepresented forensic test results, even if not writing probable-cause affidavit); *Sanchez v. Hartley*, 810 F.3d 750, 758 (10th Cir. 2016) (holding that "detectives and investigator," even though they did not write a probable-cause affidavit, "would incur liability under a malicious-prosecution theory if they knowingly or recklessly used false information to institute legal process").

7

presumptively positive for heroin. Whaley and Soucie conducted the field test, and though it tested negative for heroin, both mistakenly concluded that the brown powder was presumptively heroin. Whaley then included in his report that the substance was presumptively heroin. And Dorsey alleges that "based upon" those "false affidavit, reports, and conclusions," Dorsey was charged with possession of heroin. So though they did not author the probable-cause affidavit, Whaley and Soucie personally participated in making the false statements that prevaricated the evidence and were incorporated into the probable-cause affidavit, which caused the district judge to find probable cause for his detention. Dorsey has alleged personal participation by Whaley, Soucie, and Bayless.

The Court also disagrees with the Officer Defendants' second argument—that Dorsey has failed to allege that the original arrest lacked probable cause. A malicious-prosecution claim may be based on either (1) "knowingly, or with reckless disregard for the truth,"[25] making false statements in a probable-cause affidavit or (2) omitting from the affidavit "information which, if included, would vitiate probable cause."[26] And to evaluate whether the challenged affidavit supported probable cause, a court excises the false statements, introduces the exculpatory information, and evaluates "whether the modified affidavit establishes probable cause for the warrant."[27] Finally, when a defendant raises qualified immunity, the plaintiff must allege that the arrest lacked "arguable probable cause."[28]

---

[25] *Sanchez*, 810 F.3d at 755 (quoting *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996)).

[26] *See, e.g.*, *Hopper v. Fenton*, 14-CV-229, 2015 WL 9305690, at *3 (N.D. Okla. Dec. 21, 2015).

[27] *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015) (citing *Wolford*, 78 F.3d at 489).

[28] *Stonecipher v. Valles*, 759 F.3d 1134, 1147 (10th Cir. 2014) (requiring arguable probable cause for malicious-prosecution claim after defendant raised qualified immunity).

The modified affidavit here would not have established arguable probable cause. This is the only paragraph in the challenged affidavit that addresses Dorsey's possession of heroin—or any illegal substance, for that matter:

> While [Dorsey] was being booked into the jail, officers located a clear plastic baggie in [Dorsey's] wallet. The baggie contained a brown powdery substance that was consistent with heroin. A field test was presumptive positive for opiates. [Dorsey] would not tell officers what the substance was but denied that it was drugs.[29]

Stripped of the allegedly false statements—that the brown powder was consistent with heroin and that the test was presumptively positive for opiates—the probable-cause affidavit leaves only these facts: (1) Dorsey's wallet contained a baggie with a brown powder, (2) he would not tell Whalen and Soucie what the substance was, and (3) he denied that it was drugs. Adding in the omitted exculpatory information, the modified affidavit would have included (1) Dorsey's statement that the substance was "not illegal and some kind of cooking spices" and (2) that the K-9 officer did not alert to the wallet when it was still in the vehicle.[30] With false statements excised and exculpatory information added, the affidavit thus would have indicated that Dorsey's wallet had a brown powder and that though he did not exactly remember what it was, was not illegal, and was a cooking spice. Construing the Complaint in the light most favorable to Dorsey, the Court finds that those facts—devoid of any indication that the brown substance was anything other than a cooking spice—would not give rise to arguable probable cause that Dorsey possessed heroin.

But the Officer Defendants have a back-up charge. They argue that even if the affidavit would not support probable cause for possession of *heroin*, probable cause still existed for a

---

[29] Doc. 1-4 ¶ 3.

[30] *Id.* ¶ 16.

different charge—possession of *amphetamines*, which the field test actually tested positive for. And so, their argument goes, the arrest warrant did issue with probable cause—just for an uncharged offense. But that argument immediately stumbles: the probable-cause affidavit made no mention of Dorsey's possession of amphetamines, so the affidavit still would not support Dorsey's arrest and detention for amphetamine possession. But even setting that aside, the Officer Defendants' argument misunderstands the gravamen of a malicious-prosecution claim. A claim for malicious prosecution challenges "an arrest and detention of a person based on a criminal charge lacking probable cause."[31] And Dorsey was arrested and detained for possession of heroin[32]— not possession of amphetamines—a criminal charge that, as explained above, lacked probable cause. It was detaining Dorsey on the charge of heroin possession without probable cause that caused the constitutional injury actionable in a malicious-prosecution claim.[33] And though probable cause may have existed for some other uncharged drug offense, the Fourth Amendment violation arising from the invalid heroin charge remains. As the Supreme Court has recently explained in a similar context, when two (or more) charges are brought—one supported by probable cause; the other, not—the existence of the valid charge does not foreclose a malicious-prosecution claim for the unsupported charge.[34] Courts must

---

[31] *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562 (2024); *see also Thompson v. Clark*, 596 U.S. 36, 43 (2022) ("[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause.").

[32] Doc. 1 ¶ 17; Doc. 1-5.

[33] *See Thompson*, 596 U.S. at 42 (describing a malicious-prosecution claim as challenging an "unreasonable seizure pursuant to legal process"); *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) (explaining that the Fourth Amendment violation targeted by malicious-prosecution claim arises when, for example, "a judge's probable-cause determination is predicated solely on a police officer's false statements").

[34] *Chiaverini*, 602 U.S. at 563 ("[I]f an invalid charge—say, one fabricated by police officers—causes a detention either to start or to continue, then the Fourth Amendment is violated. And that is so even when a valid charge has also been brought . . . .").

instead assess malicious-prosecution claims "charge by charge."[35] And from that instruction, it follows *a fortiori* that the existence of probable cause for the uncharged violation—let alone a charged violation—of amphetamine possession does not foreclose a malicious-prosecution claim for the invalid heroin-possession charge.

Because the probable-cause affidavit, stripped of the false statements and augmented by the exculpatory statements, would not have supported arguable probable cause for possession of heroin, Dorsey has plausibly alleged the third element of his claim—that his arrest and detention lacked arguable probable cause.

Dorsey has also plausibly alleged the other elements of the malicious-prosecution claim. Construing the Complaint in his favor, he has plausibly alleged the causation element because the Defendant Officers made false statements, knowingly or with reckless disregard for the truth, that led to the district judge's issuing an arrest warrant against him.[36] The original action terminated in Dorsey's favor because the charges against him were dropped.[37] And malice "may be inferred" because he has alleged that the Officer Defendants "cause[d] the prosecution without arguable probable cause."[38] Finally, he alleges that Defendants' acts damaged him—he was detained without probable cause for 41 days. Dorsey has therefore plausibly alleged a violation of his constitutional rights and satisfied the first prong of the qualified-immunity analysis.

---

[35] *Id.* at 562.

[36] *See, e.g.*, *Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004) (recognizing that causation is met where defendant's statements "prevaricate[] and distort[] evidence" to cause prosecution against plaintiff).

[37] *See Carbajal v. Watada*, No. 21-1370, 2024 WL 3887252, at *3 (10th Cir. Aug. 21, 2024) ("'[A] plaintiff need only show that the criminal prosecution ended without a conviction' to satisfy the favorable-termination element." (quoting *Thompson*, 596 U.S. at 49)).

[38] *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).

He satisfies the second prong, too.  As explained above, the violation here is that Whaley, Soucie, and Bayless caused Dorsey—through false statements or misleading omissions—to be arrested and detained without due process.  That conduct violates clearly established law.[39]

Because Dorsey has plausibly alleged that the Officer Defendants violated his clearly established constitutional rights, they are not entitled to qualified immunity.  The Court therefore denies the motion to dismiss the malicious-prosecution claim against the Officer Defendants in their individual capacities on the ground of qualified immunity.

### B. Official-Capacity Claims

Dorsey also brings an official-capacity claim against the Officer Defendants and seeks to impose *Monell* liability against the City of Shawnee for its failure to train the Officer Defendants.  Dorsey concedes that the official-capacity claim against the Officer Defendants is redundant of his *Monell* claim against the City itself and is therefore subject to dismissal.  The Court agrees with that concession and therefore dismisses the official-capacity malicious-prosecution claim against the Officer Defendants.

The Court also dismisses the failure-to-train claim against the City of Shawnee.  Under *Monell v. Department of Social Services of the City of New York*,[40] an injured plaintiff may hold a municipal entity liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

---

[39] *See Chiaverini*, 602 U.S. at 563 (explaining that a police officer's fabricating a charge that leads to arrest and detention is a Fourth Amendment violation); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) ("It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit." (quoting *Franks v. Delaware*, 483 U.S. 154, 155-56 (1978))); *Pierce*, 359 F.3d at 1298 ("No one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986, in the context of information supplied to support a warrant for arrest.").

[40] 436 U.S. 658 (1978).

inflicts the injury."[41] The claim has three general requirements: (1) an underlying injury to a constitutional right of the plaintiff; (2) a municipal policy or custom, and (3) a direct causal link between the policy or custom and the injury.[42]

Dorsey's *Monell* claim falters on the second element—a municipal policy or custom. A plaintiff may demonstrate a "municipal policy or custom" through the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."[43] So when a plaintiff attempts to show a policy or custom through failure to train, he faces an additional hurdle: he must show that an alleged failure to train amounted to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."[44] That is because "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train,[45] and "[a] less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities.'"[46] Under the "deliberate indifference" standard, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary.'"[47] And "[e]vidence of 'a pre-existing pattern of violations' is only unnecessary 'in a narrow range of

---

[41] *Id.* at 694.

[42] *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

[43] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)).

[44] *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

[45] *Id.*

[46] *Id.* (quoting *City of Canton*, 489 U.S. at 392).

[47] *Connick*, 563 U.S. at 62 (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

13

circumstances,' 'however rare,' in which 'the unconstitutional consequences of a failure to train' are 'highly predictable' and 'patently obvious.'"[48]

Dorsey fails to plead deliberate indifference, so he fails to plead a policy or custom supporting *Monell* liability. Dorsey argues that the City's failure to train officers to read field tests and submit affidavits caused the malicious prosecution. His sole allegation addressing the City's failure to train is that the City "failed to adequately train and supervise their employees with respect to drug detection and the submission of . . . affidavits," which "result[ed] in the Fourth Amendment violations."[49] Even crediting that conclusory allegation, the Complaint falls short in another respect: it does not allege deliberate indifference. It makes no allegations of either a pattern of similar constitutional violations or that the violation here was a patently obvious consequence of the City's failure to train the Defendants. Dorsey argues (albeit in cursory fashion) that the violation was an "obvious and predictable" result of the failure to train simply because, in hindsight, the violation actually resulted from a failure to train.[50] But the simple fact that the violation occurred does not mean that it was highly predictable or patently obvious that the violation would result from a failure to train.[51] And to indulge Dorsey's argument—which would allow deliberate indifference to be shown simply from the fact that a violation occurred—would obviate the deliberate-indifference requirement altogether and adopt

---

[48] *Waller v. City and County of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019) (quoting *Connick*, 563 U.S. at 62–64); *see City of Canton*, 489 U.S. at 389 ("'[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986))).

[49] Doc. 1 ¶ 27.

[50] Doc. 10 at 10.

[51] *See Waller*, 932 F.3d at 1288 (concluding that plaintiff failed to show a highly predictable violation, despite occurrence of violation).

14

the sort of "less stringent standard of fault" rejected by the Supreme Court's precedent.[52] Dorsey has therefore failed to plausibly allege the City's deliberate indifference.

Without a plausible allegation of deliberate indifference, Dorsey has failed to plausibly allege a policy or custom. And because of that deficiency, he has in turn failed to plausibly allege a *Monell* claim against the City.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 7) is **granted in part** and **denied in part**. The Court dismisses the malicious-prosecution claim against the Officer Defendants in their official capacities, and the *Monell* claim against the City. The motion is otherwise denied.

**IT IS SO ORDERED.**

Dated: April 16, 2025

S/ Julie A. Robinson  
JULIE A. ROBINSON  
UNITED STATES DISTRICT JUDGE

---

[52] *Connick*, 563 U.S. at 62.